UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, AtLee and Senior Judge Clements

TARA SHANTELL ROBERTSON

MEMORANDUM OPINION[*]

v.      Record No. 1461-15-3          PER CURIAM
                                       MARCH 1, 2016

ROANOKE COUNTY DEPARTMENT
 OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF SALEM
Charles N. Dorsey, Judge

(Kelli C. Boyer; Boyer Law, PLC, on briefs), for appellant.

(Peter S. Lubeck, Assistant County Attorney; Sarah Jane Newton,
Guardian *ad litem* for the minor children; The Brambleton Law
Office, PLC, on brief), for appellee.


Tara Shantell Robertson (mother) appeals the order terminating her parental rights to her

children and approving the foster care goals of adoption. Mother argues that the trial court erred by

(1) terminating her parental rights pursuant to Code § 16.1-283(C)(2) because the evidence did not

prove that she, without good cause, has been unwilling or unable to remedy substantially the

conditions that led to the children being placed in and continuing in foster care and that the

termination of her parental rights was in the children's best interests; and (2) approving the foster

care goal of adoption because the evidence did not prove that she failed to complete the

recommended services and that the goal of adoption was in the children's best interests. Upon

reviewing the record and briefs of the parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

In September 2013, the Roanoke County Department of Social Services[1] (the Department) first became involved with mother and her two minor children, who were five years old and seven months old at the time, because of concerns about mother's substance abuse problems. Mother tested positive for oxycodone and hydrocodone. After a home visit in October 2013, the Department offered several services to mother. The Department provided her with Head Start applications, referrals to Narcotics Anonymous, and assistance with getting the older child to school. In March 2014, mother refused to submit to a random drug screen. On March 31, 2014, the Department obtained preliminary child protective orders from the City of Salem Juvenile and Domestic Relations District Court (the JDR court). Mother was ordered to submit to a drug screen, and she tested positive for oxycodone. A review hearing was scheduled for July 14, 2014, but mother did not appear. The JDR court issued a capias for mother's arrest.

As a result of the outstanding capias, the Department visited mother's residence and offered assistance in finding alternative placements for the children. Mother explained that many of her family members had died. She became "extremely upset." The police were called and arrested mother. The children entered foster care on July 14, 2014.

The Department continued to offer services to mother. In October 2014, mother completed a substance abuse evaluation. In December 2014, mother completed a psychological and parenting capacity evaluation. Mother subsequently admitted to the Department that she lied

---

[1] Mother erroneously refers to the Department as the Salem City Department of Social Services, as opposed to Roanoke County Department of Social Services. The record reflects that the Roanoke County Department of Social Services was involved in this case.

about her drug use with the evaluators. She repeatedly denied drug usage and then admitted her dependence to the Department. Between September 2013 and April 2015, on at least sixteen occasions, mother tested positive for oxycodone, hydrocodone, benzodiazepines, cocaine, morphine, hydromorphone, and suboxone. Her last positive drug screen for a drug other than suboxone or one for which she had a valid subscription was January 2015.

Mother has a history of instability. The fathers of her children were physically violent and unstable. Mother lived with thirteen people, at different times, while the children were in foster care. Despite the Department's requests, she did not provide background information on the people with whom she was living.

On December 11, 2104, Dr. Klaire T. Mundy performed a psychological and parenting capacity evaluation on mother. Dr. Mundy diagnosed mother with generalized anxiety disorder, impulse control disorder, and rule-out post-traumatic stress disorder, abuse related. Mother denied any recent prescription or drug use. However, Dr. Mundy recommended substance abuse treatment and counseling. She also recommended that mother find independent housing and full-time employment. The Department offered mental health services and counseling, but mother refused to cooperate.

When the children entered foster care, the Department arranged for them to meet with Jennifer Thomas, a licensed clinical social worker. Thomas determined that the children had special needs and recommended counseling and therapy. Both of the children had developmental delays. The youngest child also needed speech and occupational therapy.

On March 23, 2015, the JDR court terminated mother's parental rights to her children and approved the foster care goals of adoption. Mother appealed to the circuit court.

On August 6, 2015, a hearing was held in the circuit court. The children had been in foster care for more than one year. Kimberly Gonzalez, a social worker, testified that she met

with mother a few days before the hearing. When Gonzalez asked mother if she was ready to take the children, mother admitted that she was not ready. Although mother was living with an elderly man who was a family friend, she did not have a "plan B" in case something happened to the man or her living arrangements. Gonzalez said that mother told her she was working "under the table" for a man whose name she did not know because he was foreign. For several months, mother had told Gonzalez that she was getting a photo identification card from DMV so she could enroll in school and get a job.

Mother testified about her efforts to improve her situation. Mother said that she started working with Project Link and the suboxone treatment program. Project Link was an inclusive program designed for mothers with substance abuse problems and small children. The program lasted at least two years and, at the time of the hearing, mother had been participating for three and a half months. Mother was receiving counseling and psychiatric care through Project Link. She was required to participate in Narcotics Anonymous meetings. She also indicated that she was participating in a parenting program through Project Link. Mother explained that if the court terminated her parental rights, then she would not be able to continue in Project Link. She further testified that at the time of the hearing she was living with a family friend who was a retired police officer. Mother admitted that she was working "under the table" at a convenience store because she did not have identification. However, she testified that she had just received her temporary photo identification card and was waiting for DMV to mail her a permanent card. After hearing the evidence and argument, the circuit court held that it was in the children's best interests to terminate mother's parental rights to her children and approve the goals of adoption. The circuit court entered an order memorializing its rulings on August 14, 2015. This appeal followed.

ANALYSIS

Mother argues that the trial court erred by terminating her parental rights and approving the foster care goals of adoption.

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citation omitted). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

The circuit court terminated mother's parental rights pursuant to Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

The Department proved that it first became involved with mother in September 2013. Initially, mother refused to acknowledge her substance abuse problems. On July 14, 2014, the Department placed the children in foster care after mother was arrested on a capias for her failure to appear in court.

When the Department started working with mother, she told the social worker that her oldest child was challenging. Once the children were in foster care, it was determined that both of the children had special needs. They needed stability and structure. They had numerous counseling and therapy appointments. The Department expressed concern about mother's ability to meet the children's needs. For example, mother frequently was late or missed appointments

with the Department and providers, and it was uncertain as to whether she could get the children to their appointments.

In her report, Dr. Mundy expressed concern about mother's ability to parent the children. She made numerous recommendations. Mother had started working on some of the recommendations, but had not met many of them at the time of the circuit court hearing.

While the children were in foster care, the Department told mother to obtain full-time employment and stable housing. At the time of the hearing, the Department was unable to verify mother's employment because she had been working "under the table." Although mother informed the Department where she was living, the Department was unable to conduct a home study. It also was unable to conduct background checks on her housemates because mother had not provided the requested information. Mother's living situation changed when the man's daughter and her husband moved into the basement of the home where she was living. Mother did not have a plan if this living situation did not work.

Furthermore, the Department had ongoing concerns about mother's substance abuse problems. Mother had resisted the Department's help and services for many months after the children entered foster care. She admitted lying to the counselors about her drug use. Mother testified that she started Project Link approximately three and a half months before the final hearing, but the program lasted at least two years. The Department confirmed that mother was involved in the suboxone program and had started several of the classes offered through Project Link. Mother had just begun counseling in July 2015.

At the time of the hearing, the children had been in foster care for more than twelve months. Although mother had started substance abuse treatment and counseling, she admittedly was not in a position to take care of the children. The trial court acknowledged that mother had "made progress;" however, there were significant problems that mother still had to address.

"The twelve-month time limit established by Code § 16.1-283(C)(2) was designed to prevent an indeterminate state of foster care 'drift' and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement." L.G. v. Amherst Cty. Dep't of Soc. Servs., 41 Va. App. 51, 56, 581 S.E.2d 886, 889 (2003).

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Based on the record, the circuit court did not err in finding that it was in the children's best interests to terminate mother's parental rights and approve the goals of adoption.

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.